1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17

| | |
|---|---|
| LOGISTICK, INC., an Indiana corporation, | ) Case No.: 3:21-cv-00151-BEN-MDD ) |
| Plaintiff, | ) **ORDER DENYING DEFENDANT'S** |
| v. | ) **MOTION TO DISMISS** ) **PLAINTIFF'S THIRD CLAIM FOR** |
| AB AIRBAGS, INC., a California corporation, | ) **RELIEF** ) |
| Defendant. | ) **[ECF Nos. 5, 6, 7]** ) |

18

## I.   INTRODUCTION

19
20
21
22
23
24
25
26
27
28

Plaintiff LOGISTICK, INC., an Indiana corporation ("Plaintiff"), brings this action against Defendant AB AIRBAGS, INC., a California corporation ("Defendant"), alleging claims for relief for false advertising and negligent interference with prospective economic relations due to an advertisement distributed by Defendant, which Plaintiff alleges damaged Plaintiff's business.  Complaint, ECF No. 1 ("Compl.").  Before the Court is Defendant's Motion to Dismiss Plaintiff's Third Claim for Relief (the "Motion").  ECF No. 5.  The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 8.  After considering the papers submitted, supporting documentation, and applicable law, the Court **DENIES** Defendant's Motion.

-1-

## II.   BACKGROUND

### A.   Statement of Facts

Plaintiff sells disposable load bars which are used to secure cargo freight during transport.  *See* Compl. at 2-3, ¶ 7.  Plaintiff alleges that recently, Defendant began advertising for a product having similarities to Plaintiff's disposable load bars under the name of Tuffy Brackets.  *Id.* at 3, ¶ 8.  In the advertisement,[1] Defendant claims that its load bars have "30% more Holding Power than similar Disposable Load Bars."  *Id.* at 3, ¶ 9.  Defendant has acknowledged that it was referring to Plaintiff's load bar products.  *Id.* Among others, this advertisement was provided to Plaintiff's customers across the United States.  *Id.* at 3, ¶ 10.  Plaintiff also alleges that Defendant acquired one of its older products and performed faulty testing on the load bars in order to incorrectly claim that its product has 30% more holding power than Plaintiff's disposable load bar product.  *Id.* at 3, ¶ 11.

### B.   Procedural History

On January 27, 2021, Plaintiff filed this action against Defendant, alleging claims for relief for (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (2) false advertising under the California Business and Professions Code, § 17500, *et seq.*; and (3) negligent interference with prospective economic relations.  *See* Compl.

On February 15, 2021, Defendant signed a Waiver of Service, meaning a responsive pleading needed to be filed by Friday, April 16, 2021.  ECF No. 4.  On April 15, 2021, Defendant timely filed this Motion.  ECF No. 5 ("Mot.").  On May 10, 2021, Plaintiff opposed.  ECF No. 6 ("Oppo.").  On May 17, 2021, Defendant replied.  ECF No. 7 ("Reply").

---

[1]   The Court may and does consider the advertisement when ruling on this Motion given Plaintiff attached the advertisement as Exhibit "A" to the complaint.  Under the incorporation by reference doctrine, a court deciding a motion to dismiss may consider materials attached to the complaint that are referenced in the complaint.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1989).  This application of the doctrine conforms to the mandate of Rule 10(c) of the Federal Rules of Civil Procedure 10(c), which states in relevant that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

### III.   **LEGAL STANDARD**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), a court must dismiss a complaint when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). When ruling on a motion to dismiss, courts accept a plaintiff's well-pleaded factual allegations as true and construe all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, courts are not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach*, 896 F.2d at 1555, n.19. Under the incorporation by reference doctrine, however, the court may also consider documents either (1) attached to the complaint, *Hal Roach*, 896 F.2d at 1555, n.19, or (2) "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The Court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

If a court decides to grant a motion to dismiss, it must also decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See DeSoto v. Yellow Freight System, Inc.*, 957

-3-

1
2
3
4
5

F.2d 655, 658 (9th Cir. 1992).  However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility.  *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

6

## IV.   DISCUSSION

7
8
9
10
11
12
13
14
15
16
17
18
19
20

Defendant moves to dismiss Plaintiff's Third Claim for Relief for negligent interference with prospective economic relations for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  Mot. at 2:4-8.  Defendant alleges that the claim "merely asserts conclusory statements relating to its alleged economic relations, Defendant's knowledge of these relations, disruptions, and damages, without providing any facts supporting its conclusions." *Id.* at 2:9-13.  Plaintiff opposes, asking the Court to "deny the Motion because Plaintiff has sufficiently pleaded a cause of action for negligent interference with prospective economic relationship."  Oppo. at 2:11-14.   In the alternative, Plaintiff asks the Court to grant Plaintiff leave to amend, "particularly because Defendant should not be allowed to sidestep responsibility for its wrongful conduct at the pleading stage." *Id.* at 2:14-17.   Defendant replies that Plaintiff's opposition fails to provide case law to support Plaintiff' argument that it has adequately alleged the elements of negligent interference, and as such, the Court should dismiss that claim *with prejudice*.  Reply at 7:22-8:6.

21
22

The Court finds that Plaintiff alleged sufficient facts to support a claim for negligent interference.  Thus, the Court **DENIES** Defendant's Motion to Dismiss.

23

### A.   Motion to Dismiss the Third Claim for Negligent Interference

24
25
26
27
28

The elements of negligent interference with prospective economic relations require a plaintiff to plead (1) the existence of a valid economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge (actual or construed) of (a) the relationship and (b) that the relationship would be disrupted if the defendant failed to act with reasonable care; (3) the

-4-

1  defendant's failure to act with reasonable care; (4) actual disruption of the relationship; and

2  (5) resulting economic harm.  *Soil Retention Products Inc. v. Brentwood Industries, Inc.*,

3  Case No. 3:20-cv-02453-BEN-WVG, --- F. Supp. 3d ---, 2021 WL 689914, *18 (S.D. Cal.

4  Feb. 23, 2021) (citing *Nelson v. Tucker Ellis, LLP*, 48 Cal. App. 5th 827, 844, n. 5 (2020));

5  *see also* Mot. at 2:26-3:9, 4:13-25 (citing *Soil Retention* citing *Nelson*); Oppo. at 4:28-5:8

6  (citing *Nelson*).  "[I]nterference with prospective economic advantage requires a plaintiff

7  to allege an act that is wrongful independent of the interference itself."  *CRST Van*

8  *Expedited, Inc. v. Werner Enters., Inc.* 479 F.3d 1099, 1108 (9th Cir. 2007).  "California

9  courts have held that independently wrongful conduct includes actions which are

10  independently actionable, violations of federal or state law or unethical business

11  practices, *e.g.,* violence, misrepresentation, unfounded litigation, defamation, trade libel or

12  trade mark infringement."  *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d

13  1105, 1120 (N.D. Cal. 2014) (internal quotations omitted).

14  In this case, Plaintiff's Third Claim for Relief alleges that (1) "Plaintiff had an

15  ongoing business relationship with John Doe[2] customers that probably would have resulted

16  in a future economic benefit to Plaintiff"; (2) "Defendant knew or should have known of

17  this relationship between Plaintiff and John Doe customers"; (3) "Defendant knew or

18  should have known that these relationships would be disrupted if Defendant failed to act

19  with reasonable care"; (3) "Defendant failed to act with reasonable care and engaged in

20  wrongful conduct, including by making false and misleading representations of fact in its

21  advertising and promotional materials, stating that its Tuffy Brackets product has '30%

22  more Holding Power than similar Disposable Load Bars'"; (5) "Defendant disseminate[d]

23  or caused to be disseminated the aforementioned false and misleading representation of

24  fact to John Doe customers, among others"; (6) "[t]he relationship between Plaintiff and

25  John Doe customers has been disrupted, resulting in economic harm to Plaintiff"; and (7)

26

27  [2]  Plaintiff pleads that "[c]urrently, the identities of the customers are not being disclosed in this public filing for confidentiality reasons," but "[u]pon the entry of

28  confidentiality agreements, Plaintiff will disclose the . . . names."  Compl. at 5, ¶ 30.

1
2
"Defendant's wrongful conduct was a substantial factor in causing the harm to Plaintiff." Compl. at 5-6, ¶¶ 30-36.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
Defendant argues that because Defendant's advertisement referenced in the Complaint never mentions or references Plaintiff's product, it cannot interfere with Plaintiff's business.  Mot. at 2: 15-24.  Defendant also contends that "Plaintiff does not provide any facts to support (i) an economic relationship containing the probability of future economic benefit; (ii) that Defendant had knowledge of any purported relationship; (iii) that Defendant knew or should have known its actions would disrupt any alleged relationship; and (iv) actual disruption that caused Plaintiff actual harm."  *Id.* at 3:10-17, 4:25-5:4.  Thus, Defendant argues that "Plaintiff's bare recitals of some of the elements of negligent interference with prospective economic relationships are conclusory statements that fall short of the requirements to plead a plausible allegation."  *Id.* at 10:17-20. Defendant asserts that "[a]llowing Plaintiff's claim to stand as-is would mean that a party can essentially bring a claim against any competitor's comparative advertisement for negligent interference with prospective economic relationships."  *Id.* at 10:20-23.  Plaintiff opposes by noting that Defendant apparently concedes that Plaintiff has adequately alleged the element that Defendant failed to act with reasonable care (by failing to argue that Defendant inadequately pled that element), and all other elements have sufficient factual support.  *See* Oppo. at 5:8-10 (citing Mot. at 2:10-16, 3:24-4:4).

20
21
22
23
24
25
As set forth below, the Court finds that Plaintiff has pled sufficient facts showing (1) the existence of an economic relationship between Plaintiff and third-parties containing the probability of future economic benefit; (2) Defendant's knowledge of (a) the relationship and (b) the relationship's probable disruption if Defendant failed to act with reasonable care; (3) actual disruption; and (4) economic harm.  *See Soil Retention*, 2021 WL 689914 at *18.

26
### 1.   *Plaintiff Alleges the Existence of an Economic Relationship*

27
28
As to the first element, alleging the existence of an economic relationship or advantage requires alleging "a 'particular relationship or opportunity with which the

defendant's conduct is alleged to have interfered' rather than vague allegations regarding a relationship with an 'as yet unidentified' customer." *Weintraub Fin. Servs. v. Boeing Co.*, No. CV 20-3484-MWF (GJSx), 2020 U.S. Dist. LEXIS 202393, *8 (C.D. Cal. Aug. 7, 2020).  Courts have held that a tortious interference claim that rests on "a hope of future transactions" is insufficient to support a claim of tortious interference.  *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998) (Brewster, J.) (holding that the "[p]laintiff must establish an ***actual*** economic relationship or a protected expectancy with a third person, not merely a hope of future transactions") (citing *Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985)) (emphasis added).  "To show [such] an economic relationship, the cases generally agree that it must be reasonably probable the prospective economic advantage would have been realized but for defendant's interference." *Song v. Drenberg*, No. 18-CV-06283-LHK, 2019 WL 1998944, at *7-8 (N.D. Cal. May 6, 2019) (granting a defendant's motion to dismiss a tortious interference with prospective business relations claim because the plaintiffs' claim, which revolved around the plaintiff's loss of relationships with two third-parties, was "not enough to state a claim for tortious interference with prospective business relationships").  Thus, a plaintiff must allege not just "an economic relationship between the plaintiff and some third party" but also the probability of future economic benefit to the plaintiff." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

For instance, in *Song*, the court noted that plaintiff's complaint failed "to name a single entity or person with whom Plaintiffs might have had a prospective business relationship with which [the defendant] tortuously interfered." *Id.*  Instead, the complaint made only "sweeping generalizations lacking any detail about the loss of prospective business opportunities." 2019 WL 1998944 at *7.  Because the plaintiffs "merely allege[d] interference with *possible* business contracts," they had failed to point to any particular company or opportunity that was disrupted as a result of the allegedly tortious action.  *Id.* at *8.  As another example, in *Weintraub Fin. Servs., Inc. v. Boeing Co.*, the court determined that even though the plaintiffs' claims were based on the defendant's

-7-

interference with the plaintiffs' relationship with a future purchaser of a property, the plaintiffs had "not sufficiently alleged the probability of the future economic benefit, for example, by alleging the general terms of the letter of intent." 2020 WL 6162801 at *8. Accordingly, the court granted the defendant's motion to dismiss the interference claims. *Id.* It also held that the plaintiffs had not "sufficiently alleged whether this loss of prospective relationship was caused by [the defendant's] conduct." *Id.*

In this case, the Complaint never alleges which entities or individuals, if any, Plaintiff was negotiating with or could have sold products to; the type of entity; what the terms were or how much the products could have been sold for; when the contracts or sales were being negotiated (*e.g.*, whether those contracts or sales fell through before, during, or after Defendant's alleged negligent acts); and how much money, if any, Plaintiff lost as a result. Thus, like the *Weintraub* claim, Plaintiff's claim fails. Many other courts have also arrived at the conclusion that allegations of negligent interference must do more than conclusorily allege the existence of business relationships with which the defendant interfered. *See, e.g.*, *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1127-28 (1986) (reiterating that even though the specific name of the third party need not be alleged to recover for an interference claim, that party must be "identified in some manner"); *Damabeh v. 7-Eleven, Inc.* Case No. 5:12-cv-1739-LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) (relying on *Ramona* while granting the defendant's motion to dismiss without leave to amend and noting that it agreed with other courts "that a plaintiff alleging a claim for negligent interference with prospective business advantage must identify with particularity the relationships or opportunities with which defendant is alleged to have interfered") ; *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 U.S. Dist. LEXIS 156727, at *49 (N.D. Cal. Nov. 11, 2016) (granting the defendant's motion to dismiss with leave to amend because the plaintiff "solely allege[d] that it ha[d] an economic relationship with 'major consumers of biodiesel' and [did] not provide details about 'specific' companies," making it "impossible to even tell how many such relationships existed" and failing "to satisfy the substantive pleading

-8-

requirements of *Ramona* and *Damabeh*").

Plaintiff argues that the cases on which Defendant relies are inapplicable or distinguishable given the actual allegations of the Complaint. Oppo. at 7:2-4. Plaintiff contends that unlike the third party relationships at issue in *Brown*, 17 F. Supp. 2d at 1140 and *Damabeh*, 2013 WL 1915867 at \*10, for example, "Plaintiff's relationship with the John Doe customers does not entail a speculative hope of a vague class of future customers but rather Plaintiff's actual ongoing customers with whom Defendant interfered." Oppo. at 7:4-9 (citing Complaint, ¶ 30). However, Plaintiff's Complaint contains nothing more than vague allegations that "Plaintiff had an ongoing business relationship with John Doe customers that probably would have resulted in a future economic benefit to Plaintiff," and "Defendant knew or should have known of this relationship between Plaintiff and John Doe customers." Compl. at 5, ¶¶ 30-31. Defendant acknowledges that "Plaintiff provides as a footnote that 'the identities of the customers are not being disclosed in this public filing for confidentiality reasons." Mot. at 5:11-14. However, Defendant argues "this is mere pretext to avoid asserting the most basic elements of a plausible cause of action." *Id.* at 5:14-16. As Defendant points out, "'John Doe' aside, the allegations do nothing to explain the type of alleged 'economic relations' that are threatened, or even general rights alleged to be lost." *Id.* at 5:18-21. For example, "Plaintiff does not state that any third party committed to buying its products or that it was in the talks with selling products to a third party." *Id.* at 5:21-23.

Defendant also argues that other courts have held that simply saying a business has customers fails to support the element of probable future economic benefit required to support a negligent inference claim, citing to *Maquet Cardiovascular LLC v. Saphena Med., Inc.*, No. C 16-07213 WHA, 2017 WL 2311308, \*1 (N.D. Cal. May 26, 2017). In *Maquet*, the court granted the plaintiff's motion to dismiss the defendant's counterclaims for, *inter alia*, tortious interference, noting that the defendant never alleged "that it received any offers from potential purchasers." *Id.* The court reasoned that "[p]robable future economic benefit to [the defendant] cannot reasonably be inferred" from allegations which

-9-

"idenifie[d] only two 'potential purchasers.'" *Id.* Like the deficient counterclaims in *Maquet*, Plaintiff's complaint identifies a general ongoing relationship with customers rather than specifying actual opportunities or offers with which Defendant interfered. *See id.*; *see also* Mot. at 6:19-23.

Plaintiff responds by arguing that although it never specifically named its third-party customers due to confidentiality reasons, "the Complaint confirms that Plaintiff will disclose the customers' names upon the entry of a protective order." Oppo. at 5:16-18 (citing Compl. at ¶ 30, n.1). Plaintiff also conclusorily argues that "it is evident from the Complaint that these customers were consumers of Plaintiff's disposable load bars that compete with Defendant's Tuffy Brackets product." *Id.* at 5:18-21 (citing Compl. at ¶ 25). Plaintiff contends that it is not required to name specific third-parties with whom it had relationships. Oppo. at 5:25-6:12 (*R Power Biofuels, LLC v. Chemex LLC,* No. 16-CV-00716-LHK, 2016 WL 6663002, at *16 (N.D. Cal. Nov. 11, 2016); *Ramona Manor Convalescent Hosp. v. Care Enterps.*, 177 Cal. App. 3d 1120, 1132-33 (1986); *Mussnich v. Teixeira*, No. 2:20-CV-09679-MCS-AS, 2021 WL 1570832, at *5 (C.D. Cal. Feb. 23, 2021); *Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004); *Qwest Commc'ns Corp. v. Herakles, LLC*, No. 2:07-CV-00393MCEKJM, 2008 WL 783347, at *11 (E.D. Cal. Mar. 20, 2008)). Defendant replies that its "assertion is not that 'specific third parties be named,'" but rather that Plaintiff failed to "present any factual allegations that support who it had economic relationships with and what type of transactions or products these relationships involved." Reply at 3:5-12. Thus, Defendant argues that "while Plaintiff does not necessarily need to identify the party by name, it still must provide specific details with respect to each business relationship with which Defendant allegedly interfered, including the number of relationships that have been interfered." *Id.* at 4:13-18. While each of the cases on which Plaintiff relies shows that a plaintiff need not give the name of the third-party, none of them abrogates the requirement that a plaintiff still must allege sufficient facts to allow the Court to plausibly infer some real third-party—named or unnamed— existed and expected to partake in the relationship.

1    For example, in *Ramona Manor Convalescent Hosp. v. Care Enters.*, the court
2    affirmed the jury verdict in the plaintiff's favor as to the interference claim where the
3    plaintiff, a prospective operating lessee of a nursing home, sued the defendant, the holdover
4    lessee of the same facility, for interference.  177 Cal. App. 3d at 1127-28.  The *Ramona*
5    defendant had been notified by telephone by the lessor "that its lease would not be renewed
6    and that [the lessor] was negotiating a new operating lease with an unnamed third party,
7    who would take possession on July 1, 1980." *Id.*  As a result, even though the third-party
8    was unnamed, there were specific facts putting the defendant on notice that a third-party,
9    indeed, existed. *Id.*  Thus, the court reasoned that because the defendant's "decision to
10   hold over beyond the termination of the lease under which it had possession was made with
11   the knowledge that such action would frustrate the legitimate contractual expectations of a
12   specific, albeit unnamed, new lessee." *Id.*  Defendant points out *R. Power*, *Ramona*, and
13   *Damabeh* all support this Court finding that Plaintiff has failed to adequately allege
14   negligent interference.  Reply at 3:13-4:5 (citing *R. Power*, 2016 WL 6663002 at *16;
15   *Ramona*, 177 Cal. App. 3d at 1132-33; *Damabeh*, 2013 WL 1915867 at *10).

16   Both parties also discuss cases of *Mussnich*, 2021 WL 1570832 at *5; *Aagard*, 344
17   F. Supp. 2d at 1219; *Qwest*, 2008 WL 783347 at *11; and *Code Rebel, LLC v. Aqua*
18   *Connect, Inc.*, No. CV 13-4539 RSWL MANX, 2013 WL 5405706, at *7 (C.D. Cal. Sept.
19   24, 2013).  In *Mussnich v. Teixeira*, the court also denied a motion to dismiss an
20   interference claim where the plaintiff pled that "[h]e also lost potential business from two
21   long-time contacts as well as his wealth management partnership's current and former
22   financial partners." 2021 U.S. Dist. LEXIS 78859 at *11-13.  The "allegations identif[ied]
23   specific individuals and financial partners that have declined to do business with him, even
24   though the FAC [did] not mention them by name . . . describing 'an asset manager in Brazil'
25   and 'a water engineering executive.'" *Id.* at *5.  As a result, the complaint passed muster
26   at the pleading stage.  *Id.*  Defendant argues that "*Mussnich* supports a finding that
27   Plaintiff's pleadings are insufficient because they do not identify or describe specific
28   individuals or companies (i.e., a San Diego freight company or a Los Angeles retailer)."

-11-

1  Reply at 5:8-11.  Rather, "Plaintiff's allegations are a total mystery." *Id.* at 5:11-12.

2  Similarly, in *Qwest Commc'ns Corp. v. Herakles, LLC*, the court also denied a

3  defendant's motion to dismiss a tortious interference with prospective economic advantage

4  where the plaintiff alleged the defendant had access to its list of prospective customers via

5  visitor logs to which the defendant had access and "pointed Defendants to prospective

6  customers with whom Qwest had already engaged in some form of relationship."  2008

7  WL 783347, at *1, 11.  The defendants, like Defendant here, argued that the plaintiff's

8  claim failed to identify specific prospective customers with which it had a relationship.  *Id.*

9  at *11.  However, the plaintiff alleged "that it had relationships with prospective customers

10  who were in the market for the services [it] provide[d] and who had taken steps toward

11  engaging Qwest."  *Id.* at *11.  Thus, the court reasoned that this sufficiently alleged that

12  the plaintiff "had existing relationships with a finite group of potential customers sufficient

13  to state a viable cause of action."  *Id.*  Defendant argues that unlike the plaintiff in *Qwest*,

14  Plaintiff here "does not plead what type of customers it had relationships with or what

15  actions those customers took toward purchasing Plaintiff's products, if any."  Reply at

16  5:24-27.  Rather, "Plaintiff's allegations speak to phantom customers."  *Id.* at 5:28.

17  Next, in *Code Rebel, LLC v. Aqua Connect, Inc.*, the court denied the defendant's

18  motion to dismiss a negligent interference claim, where a plaintiff who had developed

19  multiple types of remote access software sued the defendant, a direct competitor that

20  marketed and sold a competing computer program.  2013 WL 5405706 at *7.  "As to the

21  first element, Plaintiff allege[d] that an economic and business relationship existed between

22  Plaintiff and its actual and prospective customers of [its] . . . programs."  *Id.* at *6.

23  Although the plaintiff never specifically identified "existing third parties with whom there

24  was an existing economic or business relationship, Plaintiff's allegation of interference with

25  'actual and potential customers' [was] sufficient to satisfy federal pleading requirements."

26  *Id.* (citing *Aagard*, 344 F. Supp. 2d at 1219).  Plaintiff argues that as in *Code Rebel*, its

27  general allegations pass muster to state a claim for relief for negligent interference.  Oppo.

28  at 6:21-24.  Finally, in *Aagard v. Palomar Builders, Inc.*, the court granted a motion to

-12-

1
2
3

dismiss a counterclaim for intentional interference; however, that case is inapposite given the dismissal was based on a conclusion that the claim was preempted by federal copyright laws.  344 F. Supp. 2d at 1219.

4
5
6
7
8
9
10
11

Here, the Court agrees that at least at the pleading stage, Plaintiff's allegations resemble those alleged in *Code Rebel*, which that court found passed muster under the *Twombly/Iqbal* standard.  Further, as in *Ramona*, *Mussnich*, and *Qwest*, even though the third-party with whom Plaintiff had the economic relationship is unnamed, there are specific facts putting the defendant on notice that a third-party, indeed, existed.  *Ramona*, 177 Cal. App. 3d at 1127-28; *Mussnich*, 2021 U.S. Dist. LEXIS 78859 at *11-13; *Qwest*, 2008 WL 783347, at *1, 11.  Thus, Plaintiff has alleged sufficient facts for the first element of a negligent interference claim.

12

### 2. *Plaintiff Alleges Facts Sufficient to Show Defendant Knew of Plaintiff's Economic Relationships*

13
14
15
16
17
18
19

As to the second element pertaining to knowledge of the economic relations, Plaintiff's complaint contains nothing more than conclusory allegations that Defendant allegedly knew of Plaintiff's economic relations with other parties.  It alleges Defendant "knew or should have known of [the] relationship existing between Plaintiff and John Doe customer."  Compl. at 5, ¶¶ 31-32.  This does not create a plausible basis to conclude Defendant had knowledge of Plaintiff's third-party economic relations.

20
21
22
23
24
25
26
27
28

Defendant argues that "if Plaintiff's 'John Doe' customers are confidential, as it claims, then how would Defendant even know the identities of Plaintiff's customers, much less that it had economic relationships with the Plaintiff?"  Mot. at 7:3-8.  Defendant returns to the *Maquet* case to argue that Plaintiff's allegations in this case fail.  *Id.* at 7:9-8:5.  In *Maquet*, the court determined that allegations showing knowledge of purported relationships with potential purchasers were merely conclusory statements. 2017 WL 2311308 at *4. These allegations included allegations that the (1) counter-claimant "engaged in negotiations with particular potential customers[,]" which said nothing about the counter-defendant's knowledge; (2) the counter-defendant was "aware of [the counter-

1  claimant's] prospective business relationships [because] both companies are competing for
2  their business," which was "conclusory and non sequitur since companies can compete in
3  the same market without ever knowing about each other's economic relationships"; (3) that
4  the counter-defendant "intended to disrupt the relationships between [counter-claimant]
5  and these prospective customers[,]" which was conclusory; and (4) that those
6  "relationships [had] been disrupted[,]" which did not speak to the counter-defendant's
7  knowledge. *Id.* In this case, admittedly, the allegations are even less specific than those
8  contained in *Maquet* because Plaintiff merely states "Defendant knew or should have
9  known of this relationship between Plaintiff and John Doe customers." Compl. at 5, ¶¶ 31-
10  32.

11        Nonetheless, Plaintiff responds that in *Code Rebel*, the court found that the plaintiff
12  had sufficiently pled the necessary facts to support the elements of its negligent interference
13  claim, including as to the second element. 2013 WL 5405706, at *7. The court stated that
14  "as Plaintiff's direct competitor, Plaintiff has alleged sufficient facts to show that
15  Defendant knew, or should have known, that" (1) Plaintiff had existing third party
16  relationships and (2) "if it did not act with due care, its actions would interfere with those
17  relationships." *Id.* at *6-7. Plaintiff argues that "[l]ikewise, here, the Complaint reflects
18  that Plaintiff and Defendant are competitors who both offer freight securing products,
19  including disposable load bars." Oppo. at 8:9-11 (citing Compl., ¶¶ 2, 7, 15, & 25).
20  Plaintiff argues that its complaint alleges that (1) "Defendant knew or should have known
21  of the relationship between Plaintiff and its John Doe customers," *id.* at 8:11-12 (citing
22  Compl., ¶ 31); (2) "Defendant disseminated or caused to be disseminated[3] the

23  ---
    [3]     Plaintiff argues that "[s]uch dissemination is sufficient to plead the knowledge
24  elements." Oppo. at 8:25-28 (citing *See Madsen v. Buffum*, No. ED1201605MWFSPX,
    2013 WL 12139139, at *3 (C.D. Cal. July 17, 2013) (finding that the plaintiff adequately
25  pled the knowledge element where he alleged that "Defendants have directed their
    communications to [the third parties at issue in that case.]")). However, this case is a far
26  cry from *Madsen*, where the defendants "launched an aggressive smear campaign against"
27  the plaintiff by "regularly us[ing] the websites . . . to communicate with business entities .
28  . . with the express purpose of interfering with active business dealings of [the plaintiff]"

-14-

advertisement raised in the Complaint to the John Doe customers, said advertisement contending that Defendant's load bars have '30% more Holding Power than similar Disposable Load Bars,'" *id.* at 8:13-16 (citing Compl., ¶¶ 9, 34 & Ex. A); and (3) "Defendant acquired one of Plaintiff's older products and performed faulty testing on the load bars in order to incorrectly claim that its product has 30% more holding power than Logistick's disposable load bar product." *id.* at 8:20-23 (citing Comp., ¶ 11). Plaintiff also argues that "[c]ontrary to Defendant's comment that '[t]here is absolutely no reference to Plaintiff in Defendant's advertisement' (Motion at 7:20-21), Defendant has acknowledged that, in making the statement that Defendant's load bars have '30% more Holding Power than similar Disposable Load Bars,' it was referring to Plaintiff's load bar products." Oppo. at 8:16-20 (citing Complaint, ¶ 9); *see also* Compl. at 3, ¶ 9 ("Defendant has acknowledged that it was referring to Plaintiff's load bar products"). Thus, Plaintiff argues that its Complaint "alleges as much, if not more, facts as what the *Code Rebel, LLC* court deemed adequate to satisfy the second and third elements of a negligent interference claim." Oppo. at 9:4-7.

Defendant responds by arguing that Plaintiff's reliance on *Maquet* and *Code Rebel* is inapposite because both of these cases are distinguishable given the statements on both of those cases specifically referenced the plaintiff. Reply at 6:1-3. Conversely, Defendant's advertisement never mentions or references Plaintiff. *Id.* at 7:11-17. Indeed, the ad only compares the product at issue to "similar metal load bars" and "similar disposable load bars." *Id.* Nonetheless, Plaintiff's complaint does allege that Defendant has acknowledged that the statements in the advertisement referred to Plaintiff's load bar products. Whether Defendant did, in fact, make this statement is a matter that can be established through discovery. However, at the pleading stage, the Court agrees that this

_____

and directing "their communications to" a holder of a line of credit and a supplier for the plaintiff. *Madsen*, 2013 WL 12139139 at *3. Thus, the court denied the motion to dismiss the interference claims. Here, there are no non-conclusory allegations that the advertisement was intended to or did reach Plaintiff's known customers.

-15-

1   factual allegation establishes that Defendant know of Plaintiff's economic relationships.

2            **3.      *Plaintiff Alleges Sufficient Facts to Plausibly Show Defendant*
3                       *Knew or Should Have Known That Plaintiff's Relationships Would*
                        *Potentially be Disrupted.*

4            The Complaint alleges that "Defendant knew or should have known that these

5   relationships would be disrupted if Defendant failed to act with reasonable care."  Compl.

6   at 5, ¶¶ 31-32.  Defendant argues that the Complaint fails to allege that Defendant knew

7   any relationship between Plaintiff and its customers would be disrupted given its

8   advertisement never even references Plaintiff or its products.  Mot. at 8:9-14.  Further,

9   "Plaintiff does not specify any third party who saw Defendant's advertisement or how

10  Defendant knew or should have known that its advertisement would disrupt Plaintiff's

11  relationship with unspecified third parties."  *Id.* at 8:21-24.  The Court agrees that the

12  allegations pled in *Code Rebel*, which the Court found sufficient were no different than

13  those in this case, and as such, finds those allegations sufficient to show Defendant knew

14  or should have known Plaintiff's economic relationships would potentially be disrupted.

15           **4.      *Plaintiff Alleges Sufficient Facts to Demonstrate an Actual*
16                      *Disruption in its Relationships with its John Doe Customers.*

17           As to the fourth element of actual disruption, Plaintiff's Complaint alleges that

18  Defendant (1) "failed to act with reasonable care and engaged in wrongful conduct,

19  including by making false and misleading representations of fact in its advertising and

20  promotional materials, stating that its Tuffy Brackets product has '30% more Holding

21  Power than similar Disposable Load Bars'"; (2) "disseminate[d] or caused to be

22  disseminated the aforementioned false and misleading representation of fact to John Doe

23  customers, among others"; and (3) disrupted "[t]he relationship between Plaintiff and John

24  Doe customers . . . resulting in economic harm to Plaintiff."  Compl. at 6, ¶¶ 33-36.

25           Plaintiff refers back to *Code Rebel* as illustrative because in that case, even though

26  the court found the plaintiff never specifically pleaded the defendant's statements adversely

27  affected the plaintiff's potential customers' willingness to purchase its products, the court

28  determined it could "draw the inference" given the defendant was the plaintiff's direct

competitor. Oppo. at 9:14-21 (citing *Code Rebel*, 2013 WL 5405706 at *6). Plaintiff states that "as in *Code Rebel, LLC*, the Complaint reflects that Plaintiff and Defendant are competitors who both offer freight securing products, including disposable load bars." *Id.* at 9:27-10:1 (citing Compl., ¶¶ 2, 7, 15, & 25). Thus, Plaintiff contends that "Defendant's false and misleading statement improperly influences consumers to purchase Defendant's product instead of competing products such as those offered by Plaintiff." Oppo. at 10:1-3 (citing Compl., ¶¶ 15 & 25). Plaintiff asserts that "[a]t minimum, these allegations allow this Court to draw the inference that Defendant's conduct disrupted Plaintiff's relationships and caused economic harm." *Id.* at 10:8-10. The Court agrees that the *Code Rebel* court's decision to infer that negative statements specifically referencing the plaintiff's product caused a disruption was reasonable. In this case, given both parties were competitors, it is reasonable to infer that an allegedly false statement based on allegedly faulty testing comparing Defendant's product with "similar products," could damage competitors, like Plaintiff. *See* Compl. at 3, ¶ 11.

Thus, Plaintiff's claim for negligent interference with prospective economic relations pleads sufficient facts to state a plausible claim for relief at the pleading stage. However, Plaintiff will have to prove these elements at summary judgment, and the Court questions whether the claims will pass muster at the summary judgment stage.

## V.  CONCLUSION

For the above reasons, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's Third Claim for Relief for Negligent Interference. Defendant must file an answer to Plaintiff's Complaint within ten (10) days of this order.

 **IT IS SO ORDERED.**

 DATED:    June 15, 2021

_____
**HON. ROGER T. BENITEZ**
United States District Judge

-17-

3:21-cv-00151-BEN-MDD